## VASSIE TOMS V. THE STATE.

No. 23569. Delivered February 5, 1947.
Rehearing Denied March 19, 1947.

*Thomas M. Ryan,* of Houston, for appellant.

*A. C. Winborn,* Criminal District Attorney, *E. G. Duggan,* and *E. T. Branch,* Assistant Criminal District Attorney, all of Houston, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the killing with malice of Thomas Gaines, and was given a penalty of 50 years in the state penitentiary.

The parties hereto were negroes. It seems that appellant had deserted his wife and family, and had been for some time living with one, Altha Mae Gaines (formerly Altha Mae Green), and they were in some kind of business together. The deceased was a soldier, and in December, 1945, he was home on a furlough. Some months previous thereto he had married Altha Mae; and

on January 1, 1946, while Gaines and his wife were visiting his mother, he was shot by appellant, and ten days later he died from the injuries there received.

Appellant complains in his Bills of Exception Nos. 2 and 3 because of the failure of the trial court to instruct the State's attorney, in his cross-examination of appellant while on the witness stand, not to inquire into a previous conviction of appellant for the crime of murder in the year 1929 in which conviction he received a penalty of 25 years in prison. The appellant, while on the stand in his cross-examination, did testify that he was thus convicted in 1929, and that he was discharged from the penitentiary in 1941 thereunder, and under his statement, the trial court permitted the testimony of the prior conviction. Appellant contended that this conviction, having been had in 1929, the same was not admissible on account of its remoteness. The careful trial court in his charge properly limited this testimony to the extent that the jury could use it alone for the purpose of affecting appellant's credibility as a witness, if they thought it did affect him.

It will be noted that his bills show that appellant was released from prison in 1941, less than six years prior to the alleged date of the presently charged offense. While there is no set rule in years in determining the remoteness of a previous conviction for a felony or crime involving moral turpitude when offered for the purpose of affecting the credibility of a witness, yet, the remoteness is sometimes concerned with reformation, and if for a period of years one has evidenced elements of reform and no further evil acts or intentions, much weight is given to such apparent reformation. On the other hand, when one who has been convicted of a felonious act and within a period of less than six years after his release from custody commits another such act, the jury might be justified in concluding an absence of any serious efforts at a reformation. We have heretofore held that the computation of remoteness should begin at the time of release, rather than the time of conviction.

In Vaughn v. State, 157 S. W. (2d) 894, it is said:

"Many matters other than the lapse of time are utilized in considering such remoteness; and it further seems to be the holding that the computation thereof should begin after one's release from prison rather than at the time of his induction therein or his conviction of crime."

See Reeves v. State, 95 Tex. Cr. R. 28, 252 S. W. 781; Wright v. State, 109 Tex. Cr. R. 164, 3 S. W. (2d) 804, 805; Shipp v. State, 104 Tex. Cr. R. 185, 283 S. W. 520.

We think no error is shown in the admission of his previous conviction, guarded as it was by the court's instruction.

Appellant's Bill of Exception No. 1 is concerned with the trial court's action on the hearing of his motion for a new trial. Included in such motion we find the following paragraph:

"A. The Jurors, J. C. Sabo and others during their deliberations in this case considered the fact that the defendant, Vassie Toms, had previously been convicted of murder and had been sentenced to serve 25 years in the State Penitentiary and during their deliberations discussed the fact that after receiving the sentence of 25 years was released from the Penitentiary in 1941, and further discussed the fact that, therefore if they should impose a sentence of 50 years against this defendant, that he would serve approximately 25 years of said sentence and that by that time, he would be unable to go around killing anyone else."

This motion was signed by an attorney and bears the following oath:

"Before me, the undersigned authority, on this day personally appeared Thomas M. Ryan, known to me and who after having been by me duly sworn on oath states and says that the facts set out in the foregoing motion for new trial are true and correct to the best of his knowledge and belief.

"Thomas M. Ryan."

The same was subscribed and sworn to before a proper authority.

The whole jury panel was present at the hearing of this motion, and appellant's attorney desired to place them on the stand, but was not allowed to do so by the trial court, to which action he excepted.

We do not think the mere statement by appellant's attorney, based on an affidavit "to the best of his knowledge and belief" was sufficient to allow an inquiry into the motives and conduct of the jury in arriving at their verdict, and we are convinced that the same amounted to an effort to allow the jury to im-

peach their verdict. There is no affidavit here present that the jury were guilty of any such misconduct as appellant's attorney seemed to believe. No juror seems to have said such to anyone, and none offered any affidavit showing such misconduct. The jurors being present, evidently appellant's attorney had an opportunity to converse with them and attempt to obtain affidavits therefrom, yet he is relegated to his own affidavit alone on information and belief. To uphold such an affidavit would open every case tried before a jury to at least an exploratory expedition, and a review of the deliberations of every jury who returned a verdict unfavorable to an attorney merely upon the attorney's information and belief.

Art. 753, C. C. P., relating to "grounds for new trial in felony" provides:

"8. Where, from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial. It shall be competent to prove such misconduct by the voluntary affidavit of a juror; and the verdict may, in like manner be sustained by such affidavit."

We do not think that such statute restricts the proof under Paragraph 8 to jurors' affidavits alone, but we do think that some kind of proof worthy of consideration and based upon some fact or information should be present before the jurors should be interrogated in an endeavor to impeach their verdict. We have heretofore held in the case of Maples v. State, 60 Tex. Cr. R. 169, 131 S. W. 567, that an affidavit of a juror relative to misconduct of the jury could not be taken by an accused's attorney, and such affidavits were stricken from the record.

We are cited to the case of Heffnarn v. State, 97 Tex. Cr. R. 127, 260 S. W. 198, in which, on the motion for a new trial the trial court refused to summon the jury when requested to do so by the accused in answer to a statement by the accused in his motion that his attorneys had talked to various members of the jury and that they had given the information that other jurors discussed the fact that accused was a bad man and a law breaker. The State demurred to these allegations because it was not shown that any juror was affected thereby. This court held that the refusal to hear this testimony was error. It will thus be noted that this matter was supported by information from two of the jurors.

In Kannmacher v. State, 51 Tex. Cr. R. 118, 101 S. W. 238,

we find the alleged misconduct of the jury supported by the affidavit of one of the jurors, and reasons were given why additional affidavits were not procured.

We are cited to the case of Means v. State, 100 Tex. Cr. R. 1, 271 S. W. 613, as authority for the fact that an affidavit on information and belief made by an accused was sufficient to cause the trial court to have the jury subpoenaed and interrogated at the hearing of the motion for a new trial. That case has such a peculiar background that it could be termed an exception to the rule. The accused was a negro charged with the unlawful killing of a white man. During the time the jury were deliberating on the verdict in the Means case, a negro bootlegger had killed a deputy sheriff and wounded the sheriff of Nacogdoches County, and was himself killed, and these two dead bodies were brought. onto the courthouse lawn and were inspected by the public about 35 feet from where the jury were, and the jurors saw this and heard a boisterous crowd of citizens condemning negroes for killing white men. This court held that an affidavit on accused's part based on information and belief was sufficient to cause an examination of the jury relative to whether or not there was misconduct on their part after viewing such scene. We think this case was correctly held to be an exception to the rule in that these happenings took place in the sight of the jury, and the affidavit was based on provable facts known to the accused.

It appears that in the case of Vyvial v. State, 111 Tex. Cr. R. 111, 10 S. W. (2d) 83, this court had before it a state of similar facts and discussed the Heffnarn case, the Means case, and the Kannmacher case, and in an interpretation of what is now Article 753, Paragraph 8, C. C. P., as summarized in the syllabus, interpreted the statute to mean that upon such issue of misconduct of the jury, where properly raised, oral testimony of jurors and others may be heard, but this court has never held that such issue may be raised save by some specific pointed affidavit stating facts which, if true, would entitle the accused to a new trial. It will not be sufficient to raise such issue by a mere affidavit upon information and belief not shown to be based upon some grounds of probably true facts. As said by the decisions, for this court to hold otherwise would result first, in a trial of the accused, and thereafter in a trial of the jury in the event of a conviction.

We are of the opinion that, in the instant case, the trial court was correct in not placing the jurors on the stand under

an affidavit such as here presented. To hold otherewise would allow any person to open the floodgates and attempt to make a jury impeach its verdict upon an information and belief without any basis therefor, save a desire for the granting of a new trial. The affiant herein shows no source of information, nor reason for its absence, and naught save the name of one juror and no statement from him. We do not think it to be sufficient and express the opinion that the trial court was correct in refusing to go into the matter of jury misconduct.

We find no error in the record, and the judgment will therefore be affirmed.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

In his motion for rehearing, appellant insists that we erred in the original disposition of this case in declining to sustain his bill of exception relating to the misconduct of the jury while deliberating on their verdict in this case and also relative to the action of the trial court in declining to hear evidence in support of the allegations in the motion.

We have again reviewed the bill of exception, the motion for new trial, and the order of the court overruling same. The motion shows that the same was verified by the attorney for appellant who states that the facts therein set out are true and correct to the best of his knowledge and belief. No affidavit from any of the jurors is attached to the motion nor is any reason assigned why such affidavit could not be obtained. It is quite obvious that the attorney for the appellant could not of his own knowledge have known what occurred in the jury room. He must necessarily have obtained such facts, if any, from some other person. Consequently, what is charged in the motion is based purely upon hearsay. In the case of Hughes v. State, 106 Tex. Cr. R. 550 (553) in passing upon a motion for new trial based on alleged misconduct of the jury, this court, speaking through Judge Morrow said, "It is plain that these are matters about which he could not have testified if an oral inquiry had been made touching the merits of his motion. On the face of the motion, the averments are but hearsay." The bill of exception recites that appellant had the jurors present in court at the time of the hearing of the motion in an effort to prove the allegations therein, but that the court declined to hear evidence from any of the jurors. The bill of exception fails

to reflect what the testimony of the jurors would have been had they been permitted to testify. In this respect, the bill is deficient since we cannot presume in the absence of a showing of what they would have testified to that their testimony would have sustained the allegations based on hearsay. See Branch's Ann. P. C. page 136.

We see no need for further discussion of the question since the same has been fully discussed in the original opinion. All other matters urged in the motion for rehearing have been considered and found to be wtihout merit.

Believing the case was properly disposed of on original submission, the motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.